UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
RAFAEL RAPOZO, *on behalf of himself and others*
*similarly situated in the proposed FLSA Collective Action,*

       Plaintiff,          **21-CV-10925 (KPF)**


     -against-

MARTIN SCHWARTZ, and CARROLL
PLACE REALTY, LLC

        Defendants.
------------------------------------------------------------------------X

---

### MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION, AND TO AMEND THE COMPLAINT

---

            Respectfully Submitted,


            Goldberg and Weinberger LLP
            630 Third Avenue, 18th Floor
            New York, NY 10017
            P: (212) 867-9595
            F: (212) 949-1857

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................. i

PRELIMINARY STATEMENT .........................................................................................1

STATEMENT OF FACTS / PROCEDURAL HISTORY ..................................................1

ARGUMENT ......................................................................................................................3

      POINT I
      PLAINTIFF'S MOTION FOR INJUNCTIVE RELIEF MUST BE DENIED
      BECAUSE THE COURT IS PRECLUDED FROM STAYING
      THE STATE COURT PROCEEDING ................................................................3

      A.  The Anti-Injunction Act Precludes the Court from
          Staying the Eviction Proceeding ........................................................3

      B.  The *Younger* Abstention Doctrine Precludes the Court from
          Staying the Eviction Proceeding ........................................................7

      POINT II
      EVEN IF THE AIA AND YOUNGER ABSTENTION DID NOT
      APPLY IN THIS CASE, PLAINTIFF HAS NOT ESTABLISHED
      SUFFICIENT GROUNDS FOR A PRELIMINARY INJUNCTION ...................8

      POINT III
      PLAINTIFF SHOULD NOT BE PERMITTED TO AMEND
      THE COMPLAINT BECAUSE IT WOULD BE FUTILE .................................12

CONCLUSION...............................................................................................................16

## **TABLE OF AUTHORITIES**

**CASES**

*273 Lee Avenue Tenants Assoc by Sanchez v. Steinmetz,*
    16-CV-6942 (WFK) (CLP), 2017 WL 11508017  (E.D.N.Y 2017).......................6

*Allen v. New York City Housing Authority,*
    10-CV-168 (CM) (DCF) (S.D.N.Y. April 20, 2010)..............................................6

*Atlantic Coast Line R. Co. v. Brotherhood of Locomotive Engineers,*
    398 U.S. 281 (1970)................................................................................................4

*Abbatiello v. Wells Fargo Bank, N.A.,*
    15-CV-4210 (SJF) 2015 WL 588497 (E.D.N.Y. Oct. 8, 2015)..............................8

*Ayyad -Ramallo v. Marine Terrace Assocs.,*
    13-CV-7038 (PKC), 2014 WL 2993448 (E.D.N.Y. July 2, 2014) .........................5

*Armstrong v. Real Estate International, Ltd,*
    05-CV-5383 (SJ) 2006 WL 354983 (E.D.N.Y. Feb. 14, 2006)..............................5

*Baumgarten v. County of Suffolk,*
    07-CV-539 (JS) (AKT), WL 1490487 (E.D.N.Y. Feb. 20, 2007).........................5

*Bosch v. Lamattina,*
    08-CV-238 (JS) (AKT), 2008 WL 4820247 (E.D.N.Y. Nov. 4, 2008) ..............6, 9

*Chick Kam Choo v. Exxon Corp.,*
    486 U.S. 140 (1988)................................................................................................4

*Clark v. Bloomberg,*
    10-CV-1263 (JG), 2010 WL 1438803 (E.D.N.Y. April 12, 2020).........................8

*Kristopher v. Stone St. Props., LLC,*
    13-CV-566 (RJS) 2013 499572 (S.D.N.Y. Jan. 29, 2013) .....................................3

*Kwong v. Guido,*
    492 N.Y.2d 678 (N.Y. Civ. Ct. 1985)...................................................................11

*Lucente v. Int'l Bus Machs. Corp.*,
    310 F.3d 243 (2d Cir. 2002)............................................................................13

*Millhaven v. Country Village Apartment,*
    19-CV-2384 (KMK), 2020 WL 5663380 (S.D.N.Y. Sept. 23, 2020) ...............4, 6

*McCalman v. Partners in Care,*
    01-CV-5844 (FM), 2003 WL 22251334 (S.D.N.Y. Sept. 30, 2003)....................15

*Mohr v. Gomez,*
    662 N.Y.S.2d 979 (1997)................................................................................11

*Moore v. Consol. Edison Co. of New York, Inc.*,
    409 F.3d 506 (2d Cir. 2005).............................................................................9

*Mullins v. City of New York,*
    626 F.3d 47 (2d Cir. 2010).............................................................................9, 13

*Noe v. Ray Realty,*
    19-CV-1455, 2019 8111914 (S.D.N.Y. July 2, 2019) ...........................................9

*Ochei v. Lapes,*
    19-CV-3700 (CM), 2020 WL 528705 (S.D.N.Y. Jan. 31, 2020) ..........................8

*O'Neil v. Hernandez,*
    08-CV-1689 (KMW), 2008 WL 2963634 (S.D.N.Y. Aug. 1, 2008).....................6

*Salazar v. Bowne Realty Associates, LLC*,
    796 F.Supp.2d 378 (E.D.N.Y. 2011) ..................................................................7

*Slattery v. Swiss Reinsurance American Corp.,*
    248 F.3d 87 (2d Cir. 2001)..............................................................................15

*Sternkopf v. White Plains Hosp.,*
    14-CV-4076 (CS), 2015 WL 5692183 (S.D.N.Y. Sept. 25, 2015).......................13

*TechnoMarineSA v. Giftports, Inc.*,
    758 F.3d 493, 505 (2d Cir. 2014)......................................................................12

*Sinisgallo v. Town of Islip Housing Authority,*
    865 F.Supp.2d 307 (E.D.N.Y. 2012) ..................................................................5

*Uddin v. City of New York,*
    427 F.Supp.2d 414 (S.D.N.Y. 2006)....................................................................15

*Wilcox v. Cornell University,*
    986 F.Supp.281 (S.D.N.Y. 2013) .........................................................................15

*Wyly v. Weiss,*
    697 F.3d 131 (2d Cir. 2013)...................................................................................4

*Younger v. Harris,*
    401 U.S. 37 (1971)..................................................................................................7


**OTHER**

Fed. R. Civ. P. 12(b)(6)..............................................................................................13

Fed. R. Civ. P. 15......................................................................................................12

28 U.S.C. § 2283..........................................................................................................3

29 U.S.C. § 215............................................................................................................9

NYLL § 215..................................................................................................................9

N.Y. Multiple Dwelling Law § 83 ............................................................................11

N.Y.C. Admin. Code § 27-053 ..................................................................................11

N.Y.C. Admin. Code § 27-054 ..................................................................................11

## PRELIMINARY STATEMENT

Defendants Martin Schwartz and Carroll Place Realty LLC ("Defendants") submit this memorandum of law in opposition to Plaintiff's motion, filed February 24, 2022, which: (1) seeks a court order enjoining the pending eviction proceeding, which is currently ongoing in state court; and (2) requests permission for leave to file an amended complaint.

For the reasons set forth below, Plaintiff's request for a preliminary injunction and permission to amend the complaint should be denied.

## STATEMENT OF FACTS / PROCEDURAL HISTORY

Plaintiff Rafael Rapozo worked for Defendant Carroll Place Realty LLC ("Carroll Place") from in or about 2019 until December 3, 2021. (Schwartz Decl. at ¶¶ 3-14.)[1] Defendant Martin Schwartz is a member of Carroll Place, and is familiar with Plaintiff's employment for Carroll Place. (Schwartz Decl. at ¶ 1-3.) Mr. Schwartz made the original decision to hire Plaintiff several years ago. (Schwartz Decl. at ¶ 3.) Specifically, Mr. Rapozo was hired to work as the live-in janitor of the residential apartment building located at 1104-1112 Carroll Place, Bronx, NY 10456 ("the building"), where he was primarily responsible for cleaning the building, and taking out the garbage. (Schwartz Decl. at ¶ 5.)  As part of his compensation, Mr. Rapozo was provided with a rent-free apartment to live in, located in the basement of the building. (Schwartz Decl. at ¶ 6.) Defendant Carroll Place also paid for all of Mr. Rapozo's utilities. (Schwartz Decl. at ¶ 7.) When Plaintiff was originally hired, Mr. Schwartz made it clear that Plaintiff would be entitled to the rent-free apartment only for as long as he remained employed to work in the building. (Schwartz Decl. at ¶ 8.)

---

[1] All citations to the Declaration of Martin Schwartz are referenced herein as "Schwartz Decl. at ¶."

On December 3, 2021, at about 6:30 P.M., several apartments in the building began to fill with smoke. (Schwartz Decl. at ¶ 9.) The New York City Fire Department was called, and tenants in the building were required to quickly evacuate the building. (Schwartz Decl. at ¶ 10.) The source of the smoke was an open grill which was being utilized in the basement area of the building by Plaintiff. (Schwartz Decl. at ¶ 11.) On the following Monday, December 6, 2021, the Carroll Place Tenant and Neighborhood Association wrote an email demanding that Carroll Place "have a full investigation to be completed by the NYC Department of Buildings and the NYFD to assure that there was no damage to the area the barbecue flames were located or no fire damage to the infrastructure to the area." (Schwartz Decl. at ¶ 12; Def. Ex. A.)[2] Tenants in the building had previously complained about Mr. Rapozo's job performance on a number of occasions. (Schwartz Decl. at ¶ 13.) Although Plaintiff stopped working following the fire incident on December 3rd, Plaintiff was presented with a formal letter of termination on December 15th. (Schwartz Decl. at ¶ 13; Def. Ex. B.) In light of his termination, Plaintiff was notified by Mr. Schwartz that he was required to vacate the apartment. (Schwartz Decl. at ¶ 15.) Defendants expected that Plaintiff would vacate the apartment at least by the end of December. (Schwartz Decl. at ¶ 15.) Plaintiff, however, refused to vacate the unit. (Schwartz Decl. at ¶ 16.) Accordingly, on January 3, 2022, Carroll Place commenced a holdover proceeding ("eviction proceeding") in Bronx County Civil Court, which is currently ongoing. (Schwartz Decl. at ¶ 17.) To date, despite having not worked in nearly three months, Plaintiff has remained living in the apartment at the building. (Schwartz Decl. at ¶ 18.) Plaintiff has not paid rent. (Schwartz Decl. at ¶ 18.)

Plaintiff commenced this action, which asserted various claims for unpaid wages under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") on December 21, 2021.

---

[2] All exhibits annexed to the Declaration of Martin Schwartz are referenced herein as "Def. Ex. __."

(Dkt. 1.) This lawsuit played absolutely no role in Defendants' decision to commence an eviction proceeding against Plaintiff. (Schwartz Decl. at ¶ 20.) The eviction proceeding was commenced solely in order to get Plaintiff to leave the apartment, as he is no longer employed by the company, and does not pay rent. (Schwartz Decl. at ¶ 20.) The eviction proceeding would have been commenced regardless of whether or not Plaintiff had filed a federal lawsuit. (Schwartz Decl. at ¶ 20.) Defendants need the apartment vacant so that Plaintiff's replacement can move in and live there. (Schwartz Decl. at ¶ 20-21.)

On February 24, 2022, Plaintiff filed the present motion which requests that the Court grant an injunction staying the eviction proceeding "pending the outcome of the instant action," and requesting permission to file an amended complaint. (Dkt. 13.) In Plaintiff's proposed amended complaint, he asserts that Defendants retaliated against Plaintiff, in violation of the FLSA and NYLL, by filing the eviction proceeding.

## **ARGUMENT**

### **POINT I**

### **PLAINTIFF'S MOTION FOR INJUNCTIVE RELIEF MUST BE DENIED BECAUSE THE COURT IS PRECLUDED FROM STAYING THE STATE COURT PROCEEDING**

**A.     The Anti-Injunction Act Precludes the Court From Staying the Eviction**

Under the Anti-Injunction Act ("AIA"), "a court of the United States may not grant an injunction to stay proceedings in a state court except as expressly authorized by act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgment." *Kristopher v. Stone St. Props., LLC,* 13-CV-566 (RJS), 2013 WL 499572, at *3 (S.D.N.Y. Jan. 29, 2013) (quoting 28 U.S.C. § 2283). The AIA "presents an absolute ban on enjoining any state court proceeding, unless the facts of the case bring the matter within one of the three narrowly

constrained exceptions." *Id.* (internal citations omitted). *See also Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 146 (1988) ("The [AIA] is an absolute prohibition against any injunction of any state-court proceedings, unless the injunction falls within one of the three specifically defined exceptions in the Act, which courts must construe narrowly.") Further, "the Supreme Court has made clear that any doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy." *Wyly v. Weiss,* 697 F.3d 131, 137 (2d Cir. 2013) (quoting *Atlantic Coast Line R. Co. v. Brotherhood of Locomotive Engineers,* 398 U.S. 281, 297 (1970))

In this case, Plaintiff has not even argued, much less established, that any of the exceptions to the application of the AIA apply. The first exception is that there has been an express authorization from Congress to provide for the injunction. There has been no express authorization from Congress to allow for an injunction in this type of case. Therefore, the first exception does not apply.

Similarly, the second exception is inapplicable here. The second exception to the AIA "is triggered only if some federal injunctive relief may be necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case." *Millhaven v. Country Village Apartment,* 19-CV-2384 (KMK), 2020 WL 5663380, at *20 (S.D.N.Y. Sept. 23, 2020) (internal citations omitted). In *Millhaven,* the plaintiff asserted that the defendant landlord had violated the Fair Housing Act ("FHA") and discriminated against her on the basis of her disability. The court noted that the "plaintiff may raise her claim that the Defendant violated the FHA as an affirmative defense to the eviction proceeding," and further noted that the "state court proceeding would in no way impair this [c]court's flexibility and authority to resolve Plaintiff's other claims against

4

[Defendant]." *Id.* at *10. In this case, Plaintiff is, of course, permitted to raise "retaliation" as a defense in the eviction proceeding in state court. Likewise, the state court eviction proceeding in no way interferes with impairs, or inhibits this court's ability or authority to resolve the claims asserted herein. The second exception, therefore, does not apply.

The third and final exception to the AIA also is inapplicable here "since it is intended to provide federal courts with the ability when necessary to prevent parties to a final federal judgment from attempting to undermine it by subsequently relitigating the same claim in state court." *Baumgarten v. County of Suffolk,* 07-CV-539 (JS) (AKT), WL 1490487, at *9 (E.D.N.Y. Feb. 20, 2007) (quoting *Armstrong v. Real Estate International, Ltd,* 05-CV-5383 (SJ) 2006 WL 354983, at *1 (E.D.N.Y. Feb. 14, 2006)) In this case, because there is no final judgment, the third exception to the AIA does not apply. *Id.*

The cases cited by Plaintiff in his brief do not support his application for injunctive relief. For example, in *Ayyad -Ramallo v. Marine Terrace Assocs.,* 13-CV-7038 (PKC), 2014 WL 2993448 at *4 (E.D.N.Y. July 2, 2014), the court ***denied*** the plaintiff's request for a preliminary injunction. In another case cited by Plaintiff, *Sinisgallo v. Town of Islip Housing Authority,* 865 F.Supp.2d 307 (E.D.N.Y. 2012), the court did grant an injunction to a group of mentally disabled tenants who brought a discrimination action against a municipal housing authority. In particular, the court determined that the second exception to the AIA applied. However, in its decision, the court acknowledged that where a plaintiff can assert a potential claim as a defense to a holdover proceeding against a private landlord, the second exception to the AIA would ***not*** apply, and the AIA would prevent the court from granting an injunction to stay the proceeding. *Id.* at 323-24. In *Sinisgallo*, the court held that, since the plaintiffs were public housing tenants, and the landlord was a public housing authority, the plaintiffs in that case were limited in their ability to raise their

federal disability claims as defenses in holdover proceedings. In this case, Mr. Rapozo faces no such limitation. It is undisputed that Carroll Place is a private landlord and that Mr. Rapozo can raise this defense regarding his claim of retaliation in state court. Accordingly, the court's decision and analysis in *Sinisgallo* is inapplicable here.[3]

In *273 Lee Avenue Tenants Assoc by Sanchez v. Steinmetz,* 16-CV-6942 (WFK) (CLP), 2017 WL 11508017, at *5-6 (E.D.N.Y 2017), which was decided five years after *Sinisgallo*, the court examined the reasoning set forth in *Sinisgallo* and declined to grant an injunction to stay an eviction proceeding. The court in *Lee* noted that *Sinisgallo* involved a federally funded municipality, and the plaintiff in that case did not have an opportunity to present their disability claims in the summary holdover proceedings. In contrast, in *Lee*, which was against a private landlord, the court noted that the plaintiffs had opportunities to present their federal discrimination claims as defenses in the state court eviction proceedings and simply failed to do so. *Id.* at *7-8. The court's analysis in *Lee* should apply to the present case. Mr. Rapozo can assert retaliation as a defense in his ongoing eviction proceeding.

Finally, it should be noted that there does not appear to be a single case in this Circuit where a federal court has granted an application for a stay of an eviction proceeding where, as here, the plaintiff's living accommodations were conditioned upon his remaining employed for the landlord company. Specifically, in the context of eviction proceedings, "courts in this Circuit have repeatedly held that the [AIA] bars a federal court from enjoining state-court eviction proceedings." *Allen v. New York City Housing Authority,* 10-CV-168 (CM) (DCF) (S.D.N.Y. April 20, 2010). *See Millhaven v. Country Village Apartment,* 19-CV-2384 (KMK), 2020 WL 5663380, at *9 (S.D.N.Y. Sept. 23, 2020) (dismissing portions of the plaintiff's complaint which sought stay

---

[3] The *Sinisgallo* case was also decided one year before the Second Circuit decided *United States v. Schurkman,* 728 F.3d 129 (2d Cir. 2013), which considerably narrowed the applicability of the second exception to the AIA.

of eviction proceeding because of the application of the AIA); *Bosch v. Lamattina,* 08-CV-238 (JS) (AKT), 2008 WL 4820247, at *1 (E.D.N.Y. Nov. 4, 2008) (ruling that AIA barred federal court from staying state court eviction proceeding); *O'Neil v. Hernandez,* 08-CV-1689 (KMW), 2008 WL 2963634, at *1 (S.D.N.Y. Aug. 1, 2008) ("the [AIA] bars this court from enjoining Plaintiff's eviction proceeding.")

In his brief, Plaintiff cites *Salazar v. Bowne Realty Associates, LLC*, 796 F.Supp.2d 378 (E.D.N.Y. 2011), which supports the premise that the employee's termination and subsequent eviction could potentially be the basis of a plausible retaliation claim under the FLSA and NYLL. However, unlike here, the court in *Salazar* was ***not*** presented with an application for injunctive relief which would result in the plaintiff remaining in his rent-free apartment indefinitely until the federal action eventually concluded, which is exactly what Mr. Rapozo is requesting in this application. In addition, in *Salazar,* unlike in this case, the plaintiff engaged in protected activity before he was purportedly subject to adverse actions.

In light of the foregoing, it is clear the AIA applies to the facts of this case, and the Plaintiff's request for a stay of the eviction proceeding should denied.

**B.**     **The *Younger* Abstention Doctrine Precludes the Court from Staying the Eviction**

Even if the AIA did not apply to this case (it does), the Court is nevertheless precluded from enjoining the eviction proceeding under the *Younger* abstention doctrine. In *Younger v. Harris,* 401 U.S. 37 (1971), the U.S. Supreme Court ruled that "a federal court may not enjoin a pending state criminal proceeding in the absence of special circumstances suggesting bad faith, harassment, or irreparable injury that is both serious and immediate." Courts in the Southern District have ruled that "the *Younger* Abstention is appropriate in only three categories of state-

court proceedings: (1) state criminal prosecutions; (2) civil enforcement proceedings that are 'akin to criminal prosecutions'; and (3) civil proceedings that implicate a State's interest in enforcing the orders and judgments of its courts. *Ochei v. Lapes,* 19-CV-3700 (CM), 2020 WL 528705, at *4 (S.D.N.Y. Jan. 31, 2020) (quoting *Sprint Communication Inc v. Jacobs,* 571 U.S. 69, 72-73 (2013)). Specifically, "when a plaintiff seeks injunctive relief relating to the same property that is the subject matter of the underlying state court action, the [third] *Sprint* prong applies." *Abbatiello v. Wells Fargo Bank, N.A.,* 15-CV-4210 (SJF) 2015 WL 588497, at *4 (E.D.N.Y. Oct. 8, 2015).

In *Clark v. Bloomberg,* 10-CV-1263 (JG), 2010 WL 1438803, at *2 (E.D.N.Y. April 12, 2020), the court determined that the *Younger* abstention doctrine precluded the federal court from staying a pending state-court foreclosure and eviction proceeding. In denying the stay, the court held the foreclosure and eviction proceedings "both concern the disposition of real property and hence implicate important state interests, and there is no reason to doubt that the state proceedings provide [plaintiff] with an adequate forum to the make the arguments that he seeks to raise in this court."

Defendants submit that, in line with the reasoning set forth in *Clark*, this court should abstain from issuing a stay of the ongoing state court eviction proceeding. Plaintiff's request for a stay should therefore be denied.

## POINT II

### EVEN IF THE AIA AND YOUNGER ABSTENTION DID NOT APPLY IN THIS CASE, PLAINTIFF HAS NOT ESTABLISHED SUFFICIENT GROUNDS FOR A PRELIMINARY INJUNCTION

As set forth in Point I*, supra,* the AIA and the *Younger* abstention doctrine precludes this court from issuing a stay of the eviction proceeding. However, even if the court was not precluded from issuing a stay in this case, Plaintiff's request for a preliminary injunction should be denied.

It is well settled that preliminary injunctive relief "is an extraordinary and drastic remedy … that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Moore v. Consol. Edison Co. of New York, Inc.*, 409 F.3d 506, 510 (2d Cir. 2005). In order to obtain a preliminary injunction, "a plaintiff must show: (1) irreparable harm in the absence of the injunction; and (2) either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits to make them fair grounds for litigation and a balance of hardships tipping decidedly in the movant's favor." *Noe v. Ray Realty,* 19-CV-1455, 2019 8111914, at *3 (S.D.N.Y. July 2, 2019) (internal citations omitted). "The decision whether to grant or deny a preliminary injunction rests within the Court's sound discretion." *Bosch v. Lamattina,* 08-CV-238 (JS) (AKT), 2008 WL 4820247, at *4 (E.D.N.Y. Nov. 4, 2008) (internal citations omitted).

In his application for injunctive relief, and in his proposed amended complaint, Plaintiff asserts that Defendants retaliated against him, in violation of the FLSA and NYLL. Under the FLSA, an employer is prohibited from "discharg[ing] or in any other manner discriminat[ing] against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to" the FLSA. 29 U.S.C. § 215(a)(3). Similarly, under NYLL, it is unlawful for an employer to "discriminate or retaliation against any employee … because such employee has made a complaint to his or her employer … that the employer has engaged in conduct that the employee, reasonably and in good faith, believes violates the statute." NYLL § 215(1)(a). Generally, in order to establish a claim of retaliation under the FLSA and the NYLL, a plaintiff must show: (1) participation in protected activity known to the defendant; (2) an employment action disadvantaging the plaintiff; and (3) causal connection between the protected activity and the adverse employment action. *Mullins v. City of New York,* 626 F.3d 47, 53 (2d Cir. 2010).

In this case, even assuming *arguendo*, that Plaintiff's lawsuit was activity protected by the FLSA and NYLL, and that the eviction proceeding constitutes an "employment action disadvantaging the plaintiff," his claim still fails because he has not, and cannot establish causation. It appears that Plaintiff is relying entirely on the temporal proximity between the filing of the present lawsuit (December 21, 2021) and the commencement of the eviction proceeding (January 3, 2022) in order to establish causation. If those two events were, indeed, the only relevant facts, then Plaintiff might very well have established a plausible retaliation claim under applicable law.

Plaintiff, however, conveniently omits two crucial undeniable facts which are fatal to his claims of retaliation. First, Plaintiff was given an apartment in the building to live in specifically as a condition of his employment for the company. Plaintiff cannot seriously dispute that his entitlement to a rent-free apartment in the building was not conditioned upon his working at the building. It clearly was.

Second, Plaintiff was terminated from employment **before** he filed this lawsuit. Indeed, paragraphs 44-45 of the complaint and proposed amended complaint allege that Plaintiff worked at the building "up to and including December 3, 2021." On December 3, 2021, Plaintiff started a fire in the building, which caused the residents to be evacuated. (Schwartz Decl. at ¶ 12; Def. Ex. A). He was terminated shortly thereafter. Critically, it is undisputed that he was terminated **before** this lawsuit was commenced on December 21, 2021, and well before Defendants were made aware of this lawsuit. Notably, Plaintiff does not even allege, much less establish with evidence that he ever engaged in activity protected by the FLSA or NYLL prior to his termination. Nor does Plaintiff allege, or establish with evidence, that Defendants somehow made statements or comments which reflect retaliatory animus. While Plaintiff is relying entirely on temporal

proximity, the chronology of events clearly demonstrates that his termination occurred prior to his filing the lawsuit. Once Plaintiff's employment concluded, Plaintiff did not have any reasonable expectation to remain living in a rent-free apartment at the building. Plaintiff was asked to vacate the unit and Plaintiff refused. The natural next step in the process was to commence an eviction proceeding, as Plaintiff has no right to remain in the apartment indefinitely. Mr. Rapozo apparently believes that he is entitled to live in the apartment, rent-free, for as long as he wants to, regardless of whether he is even working in the building. However, his occupancy in the building depended on his remaining employed, and once his employment ended, his right to live in the building ended. *See Mohr v. Gomez,* 662 N.Y.S.2d 979 (1997) ("Respondent occupied this apartment, without payment rent, incident to his employment in 1978. His occupancy rights terminated upon the termination of employment."); *Kwong v. Guido,* 492 N.Y.2d 678, 682 (N.Y. Civ. Ct. 1985) ("It has been established that a superintendent who occupies an apartment solely as an incident to his employment loses his right to occupy the apartment when his employment is terminated.")

Further, Carroll Place is ***required*** by New York State law and New York City law to have a janitor in the building. In particular, New York State Multiple Dwelling Law § 83 states that a janitor is required to reside on the premises (or within 120 feet of said premises) "whenever there are thirteen or more families occupying any multiple dwelling and the owner does not reside therein." Similarly, the New York City Administrative Code § 27-053 states that "the owner of a multiple dwelling shall provide "adequate janitorial services." More specifically, § 27-054 states that "the person who performs janitorial services for a multiple dwelling of nine or more dwelling units … shall reside in, or within a distance of one block or two hundred feet from the dwelling…"

Clearly, Defendants are required by applicable New York State and New York City law to provide a janitor who lives in the building. Plaintiff's refusal to vacate his unit is jeopardizing

Defendants' ability to: (1) comply with the law; and (2) ensure that the building's tenants reside in a clean and safe environment.

Plaintiff's attempt to assert a retaliation claim when: (a) his entitlement to the unit was conditioned upon his working for the company; and (b) his employment was terminated before he filed this lawsuit or otherwise engaged in protected activity is utterly baseless. He has neither come close to meeting the "likelihood of success on the merits" component of his burden, nor has he "raised sufficiently serious questions going to the merits to make them fair grounds for litigation." Accordingly, even in the absence of the application of the AIA or the *Younger* abstention doctrine, Plaintiff's motion for injunctive relief must be denied.

### POINT III
### PLAINTIFF SHOULD NOT BE PERMITTED TO AMEND THE COMPLAINT BECAUSE IT WOULD BE FUTILE

Plaintiff has filed a motion to amend his complaint, pursuant to Fed. R. Civ. P. 15, so as to include claims of retaliation under the FLSA and NYLL. The additional allegations set forth in the amended complaint allege that, since filing the lawsuit, Defendants have "stopped meaningfully communicating with Plaintiff," assigned Plaintiff "a disproportionately heavy workload," and "Plaintiff has also suffered material adverse changes to his employment in retaliation for filing the Complaint." (Mizrahi Ex. B at ¶¶ 104-106, 111-113.) Even if these allegations were accepted as true, Plaintiff's claims retaliation under the FLSA and NYLL fails.

Under Rule 15(a)(2), the court should freely give leave to amend when justice so requires. However, "leave may be denied for good reason, including futility, bad faith, undue delay, or prejudice to the opposing party." *TechnoMarineSA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014). "The standard for denying leave to amend based on futility is the same as the standard for granting a motion to dismiss." *IBEW Local Union No. 58 Pension Tr. Fund & Annuity Fund v.*

*Royal Bank of Scotland Grp., PLC,* 783 F.3d 383, 389 (2d Cir. 2015). Proposed amendments are futile "if they would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Id.* In order to survive a motion to dismiss under Rule 12, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Sternkopf v. White Plains Hosp.,* 14-CV-4076 (CS), 2015 WL 5692183, at *3 (S.D.N.Y. Sept. 25, 2015) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)). "Where it appears that granting leave to amend is unlikely to be productive … it is not an abuse of discretion to deny leave to amend." *Lucente v. Int'l Bus Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) As set forth in Point II, it is well settled that in order to establish retaliation under the FLSA and the NYLL, a plaintiff must show: (1) participation in protected activity known to the defendant; (2) an employment action disadvantaging the plaintiff; and (3) causal connection between the protected activity and the adverse employment action. *Mullins v. City of New York,* 626 F.3d 47, 53 (2d Cir. 2010).

In this case, Plaintiff appears to be assert that he was subject to three types of adverse employment actions: (a) Defendants stopped communicating with him after he filed the lawsuit; (b) Defendants assigned Plaintiff a disproportionately heavy workload after he filed the lawsuit; and (c) Defendants made material adverse changes to his employment after he filed the lawsuit. (.) None of the purported "adverse" actions can form the basis of a viable retaliation claim under the FLSA and the NYLL.

This lawsuit was filed on December 21, 2021. (Dkt. 1). Plaintiff was terminated from employment several weeks ***before*** the lawsuit was ever filed. Thus, to the extent Plaintiff is alleging that Defendants "stopped communicating with him" after he filed the lawsuit on

December 21st, it is undisputed that he had already been fired. There would be no reason for Defendants to communicate with Plaintiff once he was terminated from employment.

Further, Plaintiff's allegation that he was "assigned a disproportionately heavy workload after the lawsuit" makes no sense at all. Plaintiff would not have been assigned *any* workload after he filed the lawsuit on December 21st, because, as Plaintiff's own pleadings acknowledge, his last day of employment was on December 3rd. It is simply implausible to believe that Defendants simultaneously stopped communicating with Plaintiff, while also assigning him a disproportionately heavy workload several weeks *after* he was terminated from employment. Notably, Plaintiff does not include any allegations sufficient to support either theory (failure to communicate and increased workload). There are virtually no details whatsoever to support these allegations. There are no allegations regarding comments, or statements made. There are no allegations illustrating how Plaintiff's workload allegedly "increased" after the lawsuit (and after he was already terminated). In short, the allegations regarding Defendants purported failure to communicate with Plaintiff, and Plaintiff's increased workload are insufficient to establish a claim of retaliation under the FLSA or NYLL because they are inherently implausible and lack the requisite factual detail to constitute a credible claim.

The third theory advanced by Plaintiff is that he suffered "material adverse changes in his employment after he filed the lawsuit." (Mizrahi Ex. B at ¶¶ 104-106, 111-113.) This allegation, of course, is simply not possible, in light of the fact that Plaintiff's *own pleadings* acknowledge that he was never, at any point, employed by Defendants after he filed the lawsuit. The lawsuit was filed weeks after he was terminated from employment. There is simply no basis for advancing a theory that Plaintiff suffered an adverse employment action "after filing the lawsuit" when it is clear that he suffered the ultimate adverse employment action – termination of employment –

14

weeks before the lawsuit was filed. Plaintiff's claims, which have no legal or factual basis on their face, must be dismissed because it is axiomatic that in order to establish a viable claim of retaliation, the "protected activity" must occur ***before*** the allegedly adverse act. *See Slattery v. Swiss Reinsurance American Corp.,* 248 F.3d 87, 95 (2d Cir. 2001) (no retaliation where adverse action occurred five months prior to the purported protected activity); *Wilcox v. Cornell University,* 986 F.Supp.281, 288 (S.D.N.Y. 2013) ("Because this adverse action took place before Plaintiff engaged in any protected activity, she cannot establish a causal link between her termination and her complaints."); *Uddin v. City of New York* 427 F.Supp.2d 414, 433 (S.D.N.Y. 2006) (noting that "adverse actions which take place before defendant [became] aware of the protected activity cannot support a retaliation claim); *McCalman v. Partners in Care,* 01-CV-5844 (FM), 2003 WL 22251334, at *7 (S.D.N.Y. Sept. 30, 2003) (dismissing retaliation claim after determining the plaintiff could not have been fired in response to filing of her EEOC complaint since she first approached the EEOC after she was fired.)

Finally, to the extent Plaintiff is claiming that Defendants' decision to evict him was retaliation under the NYLL and FLSA, the claim fails for the same reason set forth in Point II. Plaintiff's apartment was incidental to his employment at the building. Once his employment at the building ended, he was no longer entitled to have a rent-free apartment. The natural consequence of Plaintiff's refusal to vacate the apartment following his termination was Defendants' decision to commence an eviction proceeding. There was nothing "retaliatory" about that decision to commence an eviction proceeding. Plaintiff has failed to allege any facts that would suggest otherwise.

Accordingly, Plaintiff's attempt to amend the complaint would be futile. Therefore, the court should deny Plaintiff's request to amend.

## **CONCLUSION**

For the foregoing reasons, Plaintiff's motion for a preliminary injunction, and permission to file an amended complaint should be denied, and Defendants should be awarded such other relief that the court deems just and proper.

Stuart Weinberger