# GOLDBERG AND WEINBERGER LLP
**Attorneys at Law**

**630 Third Avenue, 18th Floor**
**New York, New York 10017**

**Lewis Goldberg (N.Y., CT. & N.J.)**  **OTHER OFFICE:**
**Stuart Weinberger (N.Y. & N.J.)**  **REDDING, CT.**

**TEL: (212) 867-9595**
**FAX: (212) 949-1857**

April 30, 2022

*Via ECF*
Hon. Judge Katherine Polk Failla
U.S. District Judge
Southern District of New York
40 Foley Square
New York, NY 10007

  Re: *Rapozo, et al v. Martin Schwartz, et al*
    *Index No.: 21-CV-10925 (KPF)*

Dear Hon. Judge Polk Failla:

  This office represents the Defendants Martin Schwartz and Carroll Place Realty, LLC in this action, and I'm writing pursuant to Rule 4(A) of Your Honor's Individual Rules, to respectfully request a pre-motion conference in this case. Defendants request permission to file a partial motion to dismiss, pursuant Fed. R. Civ. P. 12(b)(6).

  On April 15, 2022, Plaintiff filed an Amended Complaint. (Dkt. 26.)[1] In the Amended Complaint, Plaintiff asserts that he was employed by Defendants from about 2017 until December 2021 as a building superintendent. Plaintiff alleges various violations under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"). Defendants anticipate filing a motion to dismiss Claim 5 (spread of hours) and Clams 9 and 10 (retaliation).

  It is well settled that to survive a motion to dismiss under Federal Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim has facial plausibility "when the plaintiff pleads

---

[1] Plaintiff filed the Amended Complaint on April 15, 2022. The same day, the court issued a notice, stating that the Amended Complaint was a "deficient pleading," because Plaintiff's motion to amend and for a preliminary injunction was, at the time, pending. On April 18, 2022, the court issued an Order (Dkt. 27) rescinding the deficient pleading notice, recognizing Plaintiff's prior request to withdraw the motion for injunctive relief and to amend the complaint. The Order further stated that the Amended Complaint filed on April 15th was the operative pleading. Accordingly, this office mis-calendared the deadline for Defendants' response to the Amended Complaint from the date of the court's April 18th Order (which would be May 2nd), rather from than the April 15th pleading (April 29th). In light of the foregoing misunderstanding, Defendants are hopeful that the court will accept this pre-motion letter as timely.

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A complaint is "properly dismissed where, as a matter of law, the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Dunn v. Sederakis,* 143 F.Supp.3d 102, 109 (S.D.N.Y. 2015) (internal citations omitted).

A spread of hours claim only applies to individuals covered by the Minimum Wage Order for Miscellaneous Industries and Occupations ("Miscellaneous Industries Order"), which states that "employees must be paid a premium for every day that 'the interval between the beginning and end of the workday exceeds ten hours." NYCRR 142-2.4. However, the Miscellaneous Industries Order specially states that it "does not apply to employees covered by … any other minimum wage order promulgated by the commissioner." *See* NYCRR 12 § 142-1.1(a). It is undisputed that the Department of Labor Commissioner promulgated a Minimum Wage Order specific to the building service industry ("Building Service Order"), which covers employees of "any person, corporation, or establishment engaged in whole or in part in renting, servicing, cleaning, maintaining, selling, or managing buildings or building space." It is also undisputed that, based on the allegations contained in the Amended Complaint, Plaintiff is covered by the Building Service Order. Therefore, the spread of hours claim under the Miscellaneous Order does not apply to Plaintiff, and he is not entitled to such relief as a matter of law. *See Almonte v. 437 Morris Park, LLC,* 14-CV-5951 (KPF), 2015 WL 7460019, at *3-4 (S.D.N.Y. Nov. 24, 2015) (granting summary judgment in favor of defendant building owner with respect to spread of hours claim asserted by building superintendent); *Jenkins v. Yellowstone Properties, Inc.,* 17-CV-7764 (VEC), 2019 WL 4392955, at*3 (S.D.N.Y. Sept. 12, 2019) (same). Plaintiff's claim should therefore be dismissed.

Further, in order to establish retaliation under the FLSA and the NYLL, a plaintiff must show: (1) participation in protected activity known to the defendant; (2) an employment action disadvantaging the plaintiff; and (3) causal connection between the protected activity and the adverse employment action. *Mullins v. City of New York,* 626 F.3d 47, 53 (2d Cir. 2010). In this case, Plaintiff appears to be assert that he was subject to three types of adverse employment actions: (a) Defendants stopped communicating with him after he filed the lawsuit; (b) Defendants assigned Plaintiff a disproportionately heavy workload after he filed the lawsuit; and (c) Defendants made material adverse changes to his employment after he filed the lawsuit. Plaintiff's retaliation claims fail because none of the purported "adverse" actions can form the basis of a viable retaliation claim under the FLSA and the NYLL.

This lawsuit was filed on December 21, 2021. (Dkt. 1). Plaintiff was terminated from employment several weeks *before* the lawsuit was ever filed. Thus, to the extent Plaintiff is alleging that Defendants "stopped communicating with him" after he filed the lawsuit on December 21st, it is undisputed that he had already been fired. There would be no reason for Defendants to communicate with Plaintiff once he was terminated from employment.

Further, Plaintiff's allegation that he was "assigned a disproportionately heavy workload after the lawsuit" makes no sense. Plaintiff would not have been assigned *any* workload after he filed the lawsuit on December 21st, because, as Plaintiff's own pleadings acknowledge, his last day of employment was on December 3rd (Am. Comp. at ¶¶ 8, 34, 35, 44-45.) It is implausible to believe that Defendants simultaneously stopped communicating with Plaintiff, while also

assigning him a disproportionately heavy workload several weeks *after* he was terminated from employment. Notably, Plaintiff does not include any allegations sufficient to support either theory (failure to communicate and increased workload). There are virtually no details whatsoever to support these allegations. In short, the allegations regarding Defendants purported failure to communicate with Plaintiff, and Plaintiff's increased workload are insufficient to establish a claim of retaliation under the FLSA or NYLL because they are inherently implausible and lack the requisite factual detail to constitute a credible claim.

The third theory advanced by Plaintiff is that he suffered "material adverse changes in his employment after he filed the lawsuit." (Dkt. 26 at ¶¶ 104-106, 111-113.) This allegation, of course, is simply not possible, in light of the fact that Plaintiff's own pleadings acknowledge that he was never, at any point, employed by Defendants after he filed the lawsuit. The lawsuit was filed weeks after he was terminated from employment. There is no basis for advancing a theory that Plaintiff suffered an adverse employment action "after filing the lawsuit" when it is clear that he suffered the ultimate adverse employment action – termination of employment – weeks before the lawsuit was filed. Plaintiff's claims, which have no legal or factual basis on their face, must be dismissed because it is axiomatic that in order to establish a viable claim of retaliation, the "protected activity" must occur *before* the allegedly adverse act. *See Slattery v. Swiss Reinsurance American Corp.,* 248 F.3d 87, 95 (2d Cir. 2001) (no retaliation where adverse action occurred five months prior to the purported protected activity); *Wilcox v. Cornell University,* 986 F.Supp.281, 288 (S.D.N.Y. 2013) ("Because this adverse action took place before Plaintiff engaged in any protected activity, she cannot establish a causal link between her termination and her complaints."); *Uddin v. City of New York* 427 F.Supp.2d 414, 433 (S.D.N.Y. 2006) (noting that "adverse actions which take place before defendant [became] aware of the protected activity cannot support a retaliation claim.")

Finally, to the extent Plaintiff is claiming that Defendants' decision to evict him was retaliation under the NYLL and FLSA, the claim fails. Plaintiff's apartment was incidental to his employment at the building. Once his employment at the building ended, he was no longer entitled to have a rent-free apartment. *See Mohr v. Gomez,* 662 N.Y.S.2d 979 (1997) ("Respondent occupied this apartment, without payment of rent, incident to his employment in 1978. His occupancy rights terminated upon the termination of employment."); *Kwong v. Guido,* 492 N.Y.2d 678, 682 (N.Y. Civ. Ct. 1985) ("It has been established that a superintendent who occupies an apartment solely as an incident to his employment loses his right to occupy the apartment when his employment is terminated.") There was nothing "retaliatory" about the decision to commence an eviction proceeding. The natural consequence of Plaintiff's refusal to vacate the apartment following his termination was Defendants' decision to commence an eviction proceeding. Plaintiff has failed to allege any facts that would suggest otherwise.

Thank you for your time and consideration regarding this matter.

Very truly yours,

_____/*S*/_____
Stuart Weinberger