# LEVIN-EPSTEIN & ASSOCIATES, P.C.

60 East 42nd Street • Suite 4700 • New York, New York 10165
T: 212.792.0046 • E: Joshua@levinepstein.com

June 3, 2022

**Via ECF**
The Honorable Katherine Polk Failla, U.S.D.J.
U.S. District Court, Southern District of New York
40 Foley Square
New York, NY 10007



Re:   *Rapozo v. Schwartz et al*
      **Case No.: 1: 21-cv-10925**

Dear Honorable Judge Failla:

     This law firm represents Plaintiff Rafael Rapozo (the "Plaintiff") in the above-referenced action. Pursuant to the directives contained in Your Honor's May 12, 2022 Order[1] [Dckt. No. 33], this letter is submitted pursuant to *Cheeks v. Freeport Pancake House, Inc.,* 796 F.3d 199 (2d Cir. 2015), seeking approval of the enclosed Settlement Agreement, which provides for a total settlement amount of $55,000.00.

     A copy of the executed Settlement Agreement is attached hereto as "**Exhibit A**."

     A Stipulation of Dismissal with Prejudice is being filed simultaneously with this letter motion, and the parties respectfully request that the court So-Order the Stipulation.

**I.  Procedural History.**

     Defendants Martin Schwartz and Carroll Place Realty LLC (together, the "Defendants") own and operate four (4) large residential buildings in the Bronx: (i) 1104 Carroll Place, Bronx, NY 10456; (ii) 1110 Carroll Place, Bronx, NY 10456; and (iii) 1112 Carroll Place, Bronx, NY 10456 (collectively, the "Carroll Street Properties"), and (iv) East 180th Street, Bronx, NY 10460 (the "180th Street Property", and together with the Carroll Street Properties, "Defendants' Properties").[2]

     According to the operative Complaint [Dckt. No. 26], Defendants continuously employed Plaintiff as a superintendent at the Carrol Street Properties and 180th Street Property from January 2017 through and including December 3, 2021. Plaintiff allegedly worked round-the-clock, (24) hours a day, seven (7) days per week addressing reoccurring emergent issues at Defendants' Properties. As a superintendent, Plaintiff's responsibilities included, *inter alia*: collecting garbage and recycling, hauling refuse bins to and from the curb, sweeping the sidewalk, cleaning the buildings' hallways and common areas, changing lightbulbs, maintaining the buildings' appearance, communicating with tenants regarding repairs, painting, plumbing, purchasing

---

[1] The undersigned wishes to apologies, in advance, for the slight delay in the submission of the instant Motion.
[2] The Carroll Street Properties are allegedly comprised of approximately 90 residential units. The 180th Street Property is allegedly comprised of 60 residential units.

supplies, repairing bathroom faucets and fixtures, repairing kitchen faucets and fixtures, repairing appliances, communicating with contractors and other building employees, shoveling snow, and generally serving as the first point of contact for resident service requests.

From approximately January 2017 through and including December 3, 2021, Defendants paid Plaintiff a fixed salary of $400 every week. Defendants also offered Plaintiff housing a residential apartment located in the basement of one of the Carroll Street Properties (the "Basement Apartment"). Plaintiff has lived in the Basement Apartment since the beginning of his employment with Defendants in 2017.[3] Plaintiff's daughter has lived with Plaintiff in the Basement Apartment from, on or around June 3, 2020.

Plaintiff alleges significant wage and hour violations under FLSA and NYLL for unpaid minimum wages, overtime compensation, untimely payments, spread-of-hours, and violations of the notice and record keeping requirements under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*. ("FLSA"), the New York Labor Law, N.Y. Lab. Law §§ 190, 650 *et seq*. ("NYLL"), and the New York Wage Theft Prevention Act ("WTPA").

Although Plaintiff regularly worked in excess of 40 hours each week, it is alleged that his employers willfully failed to pay him the applicable overtime wages. The Complaint also alleges that, at all relevant times, Plaintiff was paid his regular rate of pay for all hours work, in violation of federal and state law. Plaintiff also alleges that at all relevant times, Defendants did not compensate him for one hour's pay at the basic minimum hourly wage rate for each day his shift exceeded ten (10) hours. It is further alleged that during the relevant time period, Defendants failed to provide Plaintiff with a written notice at the time of hiring, or within the first month each year he worked for Defendants, in English or in Plaintiff's primary language. He also alleges that he was not provided with wage statements upon each payment of wages.

Defendants deny each of these claims and further contend that Plaintiff worked far fewer hours than alleged by Plaintiff. Defendants further asserted that the records of payment and time records undermined the Plaintiff's factual contentions and allegations. In addition, Defendants have produced documentation, which they maintain shows that Plaintiff began working at the building as a full-time employee in early 2019. This documentation contradicts Plaintiff's allegation that he began working for the company in 2017.

Defendants further argue that as a superintendent in a residential building, Plaintiff is covered by a unique provision of the New York minimum wage law requiring that a residential janitor be paid a minimum weekly sum per unit of the building he maintains, rather than a minimum hourly wage. N.Y. Comp. Codes R. & Regs. ("NYCRR") tit. 12, § 141-1.2.[4]

---

[3] During the four (4) month period that Plaintiff worked as a superintendent at the 180th Street Property, Plaintiff was relocated to another apartment in the 180th Street Property.

[4] The Minimum Wage Order requires that employees in the building service industry, "except a janitor in a residential building," be paid at a rate not less than one and one-half times their regular rate of pay for all hours worked in excess of forty hours per week. *Id*. § 141– 1.4. The regulations "do not provide for either minimum wages or overtime wages for 'janitors,' who are instead paid based on the number of units in the building in which they worked." *Koljenovic v. Marx*, 999 F. Supp. 2d 396, 401 (E.D.N.Y. 2014).

2

Defendants categorically deny that Plaintiff is owed any wages under the FLSA or NYLL, and deny that Plaintiff is entitled to any relief whatsoever under applicable law.

On May 9, 2022, the parties participated in a mediation before Mediator Terrance J. Nolan. After multiple rounds of negotiations, the parties reached a resolution in principle to settle this matter for a total sum of $55,000 (the "Settlement Amount") to be paid out in one (1) lump sum payment.

The settlement is fair, reasonable, and the product of arm's length negotiations between experienced counsel. For these reasons and those set forth in further detail below, the settlement should be approved.

## II.     The Settlement Agreement is Fair and Reasonable.

To determine whether an FLSA Settlement Agreement should be approved as fair and reasonable, courts in the Second Circuit consider the totality of the circumstances, including the following factors:

> (1) the plaintiff's range of possible recovery; (2) the extent to which "the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses"; (3) the seriousness of the litigation risks faced by the parties; (4) whether "the settlement agreement is the product of arm's-length bargaining between experienced counsel"; and (5) the possibility of fraud or collusion.

*Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (quotations omitted).

"Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. If the proposed settlement reflects reasonable compromise over contested issues, the court should approve the settlement." *Martinez v. Hilton Hotels Corp.*, 2013 WL 4427917, at *2 (S.D.N.Y. 2013) (citation omitted).

### A. The Settlement Sum is Substantial and Fair Given the Plaintiff's Range of Recovery.

The first factor articulated in *Wolinsky* examines "the Plaintiff's range of possible recovery." *Wolinsky,* 900 F.Supp.2d 332, at 335.

The Settlement Agreement satisfies this prong because Plaintiff's proposed ultimate recovery represents approximately 51.22% of Plaintiff's estimated maximum recovery for unpaid wages. See *Chowdhury v. Brioni America, Inc.*, 2017 WL 5953171 at *2 (S.D.N.Y. 2017) (net settlement of 40% of FLSA Plaintiff's maximum recovery is reasonable); *Redwood v. Cassway*

*Contracting Corp.*, 2017 WL 4764486 at *2 (S.D.N.Y. 2017) (net settlement of 29.1% of FLSA Plaintiff's maximum recovery is reasonable); *Beckert v. Ronirubinov*, 2015 WL 8773460, at *2 (S.D.N.Y. 2015) (approving a settlement constituting 25% of the maximum possible recovery).

The method and formula for the derivation of the Plaintiff's reasonable range of recovery assumes the following, after considering Defendants' documentation of hours worked and compensation received:

i. Plaintiff started working for Defendants in or around January 2019 (and not from January 2017, as alleged in the Complaint).

ii. Plaintiff did not work for approximately five (5) months from April 2019 to September 2019.

iii. Plaintiff worked an average of 112 hours per week, each week, within the statutory limitations period of January 2019 through and including April 2020, and from September 2020 to December 2021.

iv. Plaintiff is not owed any spread-of-hours.

v. Plaintiff was paid a flat weekly salary of $400 per week.

vi. Plaintiff should have been paid time-and-a-half for all hours worked over 40.

Taking these assumptions into account, the undersigned computed that the alleged unpaid overtime wages yielded the aggregate amount of $107,380. The undersigned yielded this amount by subtracting Plaintiff's assumed lawful wages, by Plaintiff's paid wages.[5]

The Settlement Agreement requires that Defendants pay Plaintiff a settlement sum in the amount of $55,000 to resolve the case, payable in one lump sum payment. After attorneys' fees and expenses, Plaintiff will receive payments totaling $36,255.41.

Plaintiff believes that the Settlement Amount is a fair compromise to resolve this case without further litigation, and without subjecting both parties to the time and expense of additional discovery.

The number of overtime hours Plaintiff worked was a seriously contested issue that made the settlement of the claims asserted in this action difficult. The parties engaged in discovery to address various issues related to liability and damages. In the course of informal discovery, Defendants provided check register summaries from January 14, 2019 to April 11, 2019, and from September 5, 2019 to December 9, 2021 (the "Check Register").

The Check Register potentially compromised Plaintiff's claims given that they significantly undercut the allegations of Plaintiff's work history, and compensation received. Defendants' production of employment records if credited, appear to contradict Plaintiff's claims.

---

[5] Defendants deny that Plaintiff is owed any wages.

4

The undersigned law firm conducted an analysis based on the six-year maximum compensable period of time under the NYLL while taking into consideration Defendants' production of records. Through the course of the discovery process, the key issue that evolved concerned whether or not Plaintiff was paid the appropriate minimum wage and overtime wage, for all hours worked, which Plaintiff calculated to be $107,380.

The net proceeds of the Settlement Agreement at the very least compensate Plaintiff for approximately 51.22% of Plaintiff's estimated maximum recovery for unpaid wages.

Given the risks these issues present, the Settlement Amount is reasonable.

### B.  The Settlement Agreement Avoids the Incurrence of Additional Expenses.

The second *Wolinsky* factor examines "the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses." *Wolinsky,* 900 F.Supp.2d 332, at 335. This factor also weighs in favor of *Cheeks* approval.

The Settlement Agreement resolves bona fide disputes over sharply contested issues, namely the total number of hours worked by Plaintiff. In that regard, Defendants assert that Plaintiff worked substantially fewer hours than he alleges. During the discovery phase of this case, Defendants relied on the Check Register, which Plaintiff rejected as inaccurate. If the trier of fact determined that Plaintiff worked fewer hours than alleged, it is likely that the minimum wages due to Plaintiff would be greatly reduced and, in fact, there is the possibility he would not be owed any wages. Proceeding to trial would consume significant amounts of time and resources, and Plaintiff faces the hurdles of rebutting Defendants' payroll records for certain periods of time. *See Garcia v. Jambox, Inc.,* 2015 WL 2359502, at *3 (S.D.N.Y. 2015) (Plaintiff's burden on the rebuttable presumption is high where Defendants have produced records).

The continued litigation of this case would necessitate no less than four (4) depositions, and a trial. The associated costs and the continued prosecution of this case would necessitate the incurrence of substantial attorneys' fees and costs on both sides. Accordingly, it is in the interests of both parties to effectuate a settlement.

### C.  The Seriousness of the Litigation Risk Faced by Plaintiff is High.

The third *Wolinsky* factor examines "the seriousness of the litigation risks faced by the parties." *Id at 335*. This factor also weighs heavily in favor of settlement.

Both parties face serious litigation risks as to both liability and damages, *to wit*: prevailing on whether or not the Minimum Wage Order's janitorial exemption applies, the amount of hours allegedly worked, and the amount of alleged underpayment of wages allegedly owed.

Defendants furnished Check Register summaries from 2019 to 2021. Plaintiff, in order to succeed on the merits for this period, would have to rebut the presumption that Defendants did not pay Plaintiff in accordance with NYLL and/or the FLSA. Where, as here, Plaintiff has produced no documentation of his hours worked or compensation received for this period, and Defendants have produced records, Plaintiff's burden on this rebuttable presumption is high.

5

*Gyalpo v. Holbrook Dev. Corp.*, 577 B.R. 629 (E.D.N.Y. 2017); *Garcia v. Jambox, Inc., supra* (S.D.N.Y. 2015).

Accordingly, the seriousness of the litigation risks on the part of both parties' continued prosecution of the case weighs in favor of settlement.

### D. The Settlement Agreement is a Fair Compromise Accomplished Between Experienced Counsel Following Court-Ordered Mediation.

The fourth *Wolinsky* factors examines "whether the settlement agreement is the product of arm's-length bargaining between experienced counsel" as well as the "possibility of fraud or collusion." *Wolinsky,* 900 F.Supp.2d 332, at 335. This factor weighs heavily in favor of *Cheeks* approval.

The contested issues, and arms-length negotiation by counsel demonstrate there was no fraud or collusion. *See Meigel v. Flowers of the World, NYC, Inc*., 2012 WL 70324, at *1 (S.D.N.Y. Jan. 9, 2012) ([T]ypically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement). *Abrar v. 7-Eleven, Inc*., 2016 WL 1465360, at *2 (E.D.N.Y. 2016). Additionally, Plaintiff is satisfied with the settlement amount and voluntarily and willingly entered into the agreement.

Levin-Epstein & Associates, P.C. has obtained favorable decisions in wage-and-hour cases that have set precedent in this area of law. *See Singh v. Lintech Elec., Inc.,* 2021 WL 1062533, at *3 (E.D.N.Y. 2021) (securing dismissal of fraudulent conveyance actions, and cancellation of *lis pendens*, filed in FLSA action); *Suarez et al v. Brasserie Felix, Inc. et al*, Case No. 19-cv-07210, Dckt. No. 59 (hired by Plaintiffs' counsel to facilitate resolution in bankruptcy proceedings and secured $800,000 settlement on behalf of twelve (12) FLSA plaintiffs); *El Aalaoui v. Lucky Star Gourmet Deli Inc.,* 2021 WL 22787, at *1 (S.D.N.Y. 2021) (successfully vacating default judgment entered against FLSA defendants in the amount of $231,660); *Rivera v. Crabby Shack, LLC,* 2019 WL 8631861, at *5 (E.D.N.Y. 2019) (successfully arguing motion to enforce and approve settlement agreement on behalf of defendants)*; Pugh v. Meric*, 2019 WL 2568581, at *2 (S.D.N.Y. 2019) (post-bench trial order issued by the Hon. Judge Denise Cote, holding that the "wage notice penalty" in NYLL § 198(1)(1-b), by its very terms, does not mandate the imposition of damages); *Pugh v. Meric*, 2019 WL 3936748, at *5 (S.D.N.Y. 2019) (post-bench trial order reducing plaintiff's attorneys' fees award of $8,000 to $800); *Reyes v. The Picnic Basket, Inc.,* Case No. 18-cv-140, Dckt. No. 39, at *3-4 (S.D.N.Y. 2018) (successfully opposing Plaintiff's motion for conditional certification).

Moreover, the Settlement Agreement protects Plaintiff from the risk of default by requiring Defendants to execute a Settlement Agreement providing for recovery of attorneys' fees in the event of default.  *See* Ex. A.

**III.     The Allocation for Attorneys' Fees and Costs is Reasonable.**

As Plaintiff's counsel, the undersigned agreed to be paid a 1/3 contingency fee, agreed to by Plaintiff in his Retainer Agreement, which is reduced to writing and is signed by Plaintiff, a copy of which is attached as "**Exhibit B**".

Disbursements we have paid are limited to service of process ($217.60) and a filing fee ($402.00), for a total of $619.60 in costs. The undersigned deducted that amount from the Settlement Amount, and divided the difference by three, with one-third for legal fees and two thirds to Plaintiff. Proof of disbursements are included in "**Exhibit C**". A true and correct copy of Plaintiff's counsel's contemporaneous time and billing records, documenting each attorneys' hourly rate, hours expended, and tasks worked on, is annexed hereto as **Exhibit "D"**.

The contingency fee in this case should be approved because it is the fee Plaintiff agreed upon in his retainer agreement. *In re Lawrence*, 24 N.Y.3d 320, 339 (2014) ("Absent incompetence, deception or overreaching, contingent fee agreements that are not void at the time of inception should be enforced as written.").

Moreover, the one-third contingency is the fee which courts in this District consider to be presumptively fair in FLSA cases. *See, e.g., Castillo v. Cranes Express Inc*., 2018 WL 7681356, at *5 (E.D.N.Y. 2018) (same); *Vidal v. Eager Corp*., 2018 WL 1320659, at *2 (E.D.N.Y. 2018); *Ezpino v. CDL Underground Specialists, Inc*., 2017 WL 3037483, at *3 (E.D.N.Y. 2017); *Hdir v. Salon de Quartier*, 2017 WL 8950426, at *2 (E.D.N.Y. 2017) ("Courts in this district using the percentage method have found a fee award of one third of the settlement amount to be reasonable".) (*citing Romero v. Westbury Jeep Chrysler Dodge, Inc*., 2016 WL 1369389, at *2 [E.D.N.Y. 2016]); *Calle v. Elite Specialty Coatings Plus, Inc.,* 2014 WL 6621081 at *3 (E.D.N.Y. 2014) (approving settlement of FLSA and NYLL claims stating that a "one-third contingency fee is a commonly accepted fee in this Circuit"); *Rangel v. 639 Grand St. Meat & Produce Corp*., 2013 WL 5308277 at *2 (E.D.N.Y. 2013) (approving attorney's fees of one-third of FLSA settlement amount, plus costs, pursuant to plaintiff's retainer agreement, and noting that such a fee arrangement "is routinely approved by courts in this Circuit").

Based on this, the requested fee of one-third of Plaintiff's recovery should be found reasonable and permitted. The parties respectfully request that the Court approve the settlement as fair and reasonable and So Order the proposed Stipulation to Dismiss the case.

**IV.     The Agreement Satisfies All Other Factors Considered for Approval.**

The terms of the Settlement Agreement are consistent with *Cheeks*. For example, the release in the Agreement is limited to wage-and-hour claims and there are no confidentiality or non-disparagement provisions. The settlement was reached following arm's-length negotiations between counsel well-versed in wage-and-hour law and following extensive discovery.

In sum, the settlement is fair and reasonable, providing Plaintiff with a substantial recovery protected against the uncertainties and costs of trial, and should be approved by the Court.

We thank the Court for its time and consideration of this matter.

                Respectfully submitted,

                LEVIN-EPSTEIN & ASSOCIATES, P.C.

                By: */s/ Jason Mizrahi*
                    Jason Mizrahi, Esq.
                    60 East 42nd Street, Suite 4700
                    New York, NY 10165
                    Tel. No.: (212) 792-0048
                    Email: Jason@levinepstein.com
                    *Attorneys for Plaintiff*

The Court has reviewed the settlement documents for fairness in accordance with the FLSA and Second Circuit law, *see, e.g., Cheeks* v. *Freeport Pancake House*, 796 F. 3d 199 (2d Cir. 2015), and has concluded that the terms are fair and reasonable.  It should be noted, however, that the Court is not in this endorsement opining specifically on the reasonableness of the rates charged by the attorneys and paralegals representing Plaintiff.

Accordingly, the settlement is approved, and the Clerk of Court is directed to terminate all pending motions, adjourn all remaining dates, and close this case. The Court will also so-order separately the stipulations of dismissal submitted by the parties.

Dated:    June 6, 2022                  SO ORDERED.
        New York, New York

                                            HON. KATHERINE POLK FAILLA
                                            UNITED STATES DISTRICT JUDGE